John FROST and Beverly Frost,
Respondents,

v.

Hubert E. WHITE, Jr., Defendant,

and

American States Insurance Company,
and Liberty Mutual Insurance
Company, Intervenors–Appellants.

No. WD 41588.

Missouri Court of Appeals,
Western District.

Aug. 8, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 3, 1989.

Application to Transfer Denied
Nov. 14, 1989.

Thomas H. Davis, Morris and Larson, P.C., Kansas City, for Am. States Ins. Co.

Ronald L. Edelman, Sherman, Wickens, Lysaught & Speck, Kansas City, for Liberty Mut. Ins. Co.

Leonard K. Breon, Breon and Leffler, Warrensburg, for Frost.

Barry W. Finkel, Warrensburg, for White.

Before CLARK, P.J., and
LOWENSTEIN and BERREY, JJ.

CLARK, Presiding Judge.

The issue in this case is whether the trial court erred when it denied the motion of appellant, Liberty Mutual Insurance Company, to intervene in a suit brought by respondents, John and Beverly Frost, against an uninsured motorist, Hubert E. White, Jr., for injuries John Frost sustained in an automobile collision. The interest in the cause asserted by Liberty Mutual arose because of the insurance it provided, including uninsured motorist coverage on the rental vehicle in which Frost was a passenger.

On June 15, 1988, John Frost was riding as a passenger in an automobile being driven by John Gibson and rented from Alamo Rent–A–Car. At a point on Missouri Highway 13 in Johnson County, a truck operated by Hubert White collided with the car driven by Gibson. Frost sustained injuries and Gibson died as a result of the accident. White had no liability insurance on his vehicle. The policy written by Liberty Mutual on the Alamo car included uninsured motorist coverage. Liberty Mutual is potentially liable to pay within its policy limits such sums as White may owe in damages to Frost and his wife.

The Frosts filed suit against White November 8, 1988. White was served with suit papers November 12, 1988, but he filed no answer to the petition. On December 19, 1988, the case was called for trial. The legal file provides no indication of how the trial setting was obtained, but it was presumably at the request of plaintiffs' attorney. White was evidently notified because he appeared with his attorney. White testified as a witness called by plaintiffs and he acknowledged that the accident was his fault and that he had been drinking beer and whiskey earlier. Evidence was also presented by the Frosts as to the injuries John Frost sustained in the accident and the expenses which had been incurred. No evidence was offered by White in defense of the suit. The court then entered judgment against White and in favor of John Frost for $600,000 and in favor of Beverly Frost for loss of services in the amount of $150,000. The judgment was formalized by an entry dated December 22, 1988.

Liberty Mutual was aware at all relevant times that White was uninsured. Liberty Mutual also knew that suit had been filed, a copy of the petition having been sent to them by Frosts' attorney on November 16, 1988. That communication, however, did not report the date of service of process on White nor did counsel inform Liberty Mutual of the trial setting. Liberty Mutual learned of the entry of judgment the first week in January, 1989 when a letter from Frosts' attorney dated December 30, 1988 reporting that fact was received. On January 17, 1989, Liberty Mutual moved to intervene in the case for the purpose of filing a motion to set aside the judgment of December 22, 1988. The trial court denied the motion on January 19, 1989 and this appeal followed.

Liberty Mutual contends that the trial judge erred in his ruling because Liberty Mutual has a right as the uninsured motorist carrier to intervene in a suit where the uninsured motorist is a defendant. They say that right of intervening arises because of a potential liability to pay a judgment rendered against White and because Liberty Mutual's interests were not protected by any of the existing parties in the case.

The first matter to be addressed is respondents' motion to dismiss the appeal. They contend the issue of Liberty Mutual's right to intervene has been rendered moot by reason of a second action Liberty Mutual has commenced in the Johnson County Circuit Court. That suit, which also names Ruby Gibson, the widow of John Gibson, as a defendant together with respondents, is in two counts. The first count is an interpleader. Liberty Mutual there alleges that its limit of liability is $50,000, that the claims of respondents and Ruby Gibson greatly exceed that sum and it prays the court to allocate the policy proceeds among respondents and Ruby Gibson. A deposit of $50,000 in the registry of the court was concurrently made.

In the second count of the interpleader suit, Liberty Mutual presents for adjudication the dispute over its policy limit. For

reasons not material to the present appeal, it appears that respondents, and perhaps Ruby Gibson as well, do not agree that the limit of Liberty Mutual's uninsured motorist coverage is $50,000. Respondents apparently claim a greater amount is at risk under the coverage, perhaps equaling as much as $1,000,000. In the second count of the interpleader suit, Liberty Mutual seeks a determination that the $50,000 deposited in the registry of the court will satisfy its policy obligation.

■ Respondents base their motion to dismiss on the theory that once Liberty Mutual paid its policy limit into court, it could not retain any viable interest in the question of how much damages were awarded against White. If that be so, then no purpose would be served by allowing intervention and considering a motion to set aside the 1988 judgment.

This argument ignores the fact that the amount of Liberty Mutual's coverage has yet to be determined. If respondents' contention in the interpleader suit is upheld, then to whatever extent the Liberty Mutual policy be determined to afford uninsured motorist benefits above $50,000, the company has a direct financial stake in any judgment rendered against White. Unless or until respondents concede the limit of Liberty Mutual's liability is $50,000, or until that amount be judicially determined to be the limit of the policy coverage, the appeal in this case does not present a moot question. The motion to dismiss the appeal is overruled.

■ Turning to the merits of the appeal, Liberty Mutual contends the trial court erred because Liberty Mutual was entitled to intervene in the Frosts' damage suit as a matter of right. This claim is based on Rule 52.12(a) which provides, in effect, that intervention is available as a matter of right, upon timely application, when the applicant claims an interest in the subject matter of the litigation, that interest is inadequately represented by the existing parties and the ability of the applicant to protect his interest will be impaired if he is not permitted to intervene.

In the case of a claim upon the coverage of an uninsured motorist carrier, the insurer must intervene in a suit against the uninsured motorist if it wishes to raise defenses on issues of liability and damages. If adequate notice and an opportunity to intervene are provided, and absent fraud or collusion, the failure of the insurer to intervene will estop it from re-litigating those issues. *Beard v. Jackson,* 502 S.W.2d 416, 418 (Mo.App.1973). In fact, it is not debatable that the insurance carrier has a right under Missouri law to intervene in a case where a claim is made that there is an uninsured motorist as a named defendant. *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719–20 (Mo. banc 1979).

Rule 52.12 establishes two classes of intervention rights, intervention of right and passive intervention. It has been said that where intervention is sought as of right and the movant brings himself within the terms of the rule, the trial court has no discretion in the matter. *State ex rel. Aubuchon v. Jones,* 389 S.W.2d 854, 861 (Mo.App.1965). It is, however, fundamental that application for intervention as a matter of right must be timely. *Model Housing and Dev. Corp. v. Collector of Revenue,* 583 S.W.2d 574, 576 (Mo.App.1979). A trial court therefore has some discretion in cases where application for intervention is based on Rule 52.12(a), because the movant can only bring himself within the terms of the rule if he shows both a right to intervene and a timely presentation of his application.

In the present case, the only issue relative to Liberty Mutual's intervention motion was whether the application, filed after entry of judgment, was timely. The trial court determined it was not and denied the motion.

The law in Missouri is not well defined where the issue is timeliness of a motion to intervene filed after trial setting, but before the judgment or decree has become final. *See id.* There is some authority to the effect that an application for intervention subsequent to trial is not timely unless substantial justice mandates otherwise. *State ex rel. Ashcroft v. American Triad*

*Land Co.*, 712 S.W.2d 62, 64 (Mo.App. 1986).

The Federal Rule 24 is essentially the same as our Rule 52.12. In commenting on the federal rule, and the issue of timeliness, the following appears in 7C C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, Civil 2d § 1916 (1986):

> The requirement of timeliness is not a means of punishment for the dilatory and the mere lapse of time by itself does not make an application untimely. The court must weigh the lapse of time in the light of all the circumstances of the case.... The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.
>
> . . . .
>
> There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant.

The issue of timeliness of an application to intervene, where the proposed intervenor is otherwise entitled to intervene of right, invokes an exercise of the trial court's discretion in determining two factors referred to in the above authorities. The first is whether substantial justice mandates allowance of intervention and the other is whether existing parties to the case will be prejudiced if intervention is permitted. If the trial court failed to give appropriate consideration to these factors, then the decision is subject to reversal for an abuse of discretion.

The issue of substantial justice was not, according to the record here, considered by the trial court in passing on Liberty Mutual's motion. It is first apparent that if Liberty Mutual is not allowed to intervene, it faces a prospective obligation to pay a judgment of up to $750,000, depending on the ultimate resolution of the policy coverage dispute. That judgment was rendered in a proceeding convened thirty-seven days after service of process and without notice to Liberty Mutual that the cause would be taken up. The trial record indicates that the nominal defendant confessed his fault in the accident, offered no defense on the issues of liability or damages and allowed plaintiffs' proof of damages to be introduced without challenge. The damages the court awarded far exceeded the actual damages proved and, in the case of Beverly Frost, were supported by virtually no proof. The trial was not an adversary proceeding calculated to result in a dispassionate appraisal of the issues. These facts militate significantly in favor of allowing intervention to accomplish substantial justice.

The issue of prejudice to respondents was also not considered by the trial court as bearing on its decision. Respondents made no argument to the trial court and they make none here suggesting that granting Liberty Mutual's intervention motion would prejudice their case. The brief period of time from the filing of respondents' petition to the date on which Liberty Mutual sought intervention presents no factor of prejudice from delay in adjudication of the claims and respondents do not suggest, nor do any of the facts indicate, any prospect that respondents could have changed their position detrimentally in the interval. *See State ex rel. Duggan v. Kirkwood*, 357 Mo. 325, 338, 208 S.W.2d 257, 262 (banc 1948).

The record of proceedings on Liberty Mutual's motion does indicate that the trial judge considered and ruled Liberty Mutual's motion to intervene on two considerations. The first was a perception that Liberty Mutual had been careless or dilatory in failing to move for intervention promptly after being notified that suit had been filed against the uninsured motorist. The second ground was the expressed view that the press of cases requiring the court's attention could not tolerate further consideration of the present case to which time had already been devoted in hearing the evidence to procure the original judgment. These are not factors appropriate as a basis for decision on the issue at hand. Denial of intervention otherwise available as of right should not be denied as a means of

sanction for delay nor to expedite the court's docket if there is no showing of substantial prejudice resulting from delay and if substantial justice is served by granting intervention.

This court has previously held that intervention should be allowed with considerable liberality. *Ainsworth v. Old Security Life Ins. Co.*, 685 S.W.2d 583, 586 (Mo.App. 1985), and cases there cited. In the circumstances of this case, considering the fact that Liberty Mutual filed its motion to intervene within sixteen days after learning of the judgment, that respondents have shown no prejudice to their case if intervention be allowed and the significant financial consequences to Liberty Mutual if the present judgment stands, we conclude that the trial court abused its discretion in denying the motion to intervene.

The order denying appellants' motion to intervene is reversed and the cause is remanded with direction that the court grant the motion of Liberty Mutual to intervene.

All concur.